# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Bankruptcy Case No. 15 B 19829 |
| | ) | |
| LOLITA MICHELLE FENNER, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Honorable Janet S. Baer |
| | ) | |
| | ) | |
| CHICAGO PATROLMEN'S FEDERAL CREDIT UNION | ) | Adversary Case No. 15 A 550 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| LOLITA MICHELLE FENNER, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Chicago Patrolmen's Federal Credit Union filed an adversary complaint against the Debtor seeking a determination that a debt owed to it by the Debtor is nondischargeable pursuant to 11 U.S.C. § 523(a)(2).[1] For the reasons set forth below, the Court finds that the Plaintiff has failed to meet its burden to establish the elements required under that statutory exception. As such, the debt at issue will not be excepted from discharge.

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. This is a core proceeding. 28 U.S.C. § 157(b)(2)(I).

---

[1] Unless otherwise noted, all statutory and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101 to 1532, and the Federal Rules of Bankruptcy Procedure.

## BACKGROUND

The pertinent facts are derived from the pleadings filed in this adversary proceeding and the testimony and various exhibits admitted into evidence during a bench trial that was held on June 29, 2016. At trial, Ray Davis, an asset recovery manager of the Plaintiff, testified for the Plaintiff. The Debtor testified as an adverse witness and in her own defense.

The Debtor was a Chicago police officer for twenty-five years before retiring early for health-related reasons. (Trial Tr. 31:16-32:1, June 29, 2016 (hereafter "Trial Tr. __:__").) She is living on pension income. (*Id.* at 31:8-13.)

In August 2014, in an effort to reduce her living expenses, the Debtor listed for sale her residence on 83rd Street with an asking price of $250,000. (*Id.* at 32:5-33:2; Joint Pretrial Statement, Docket No. 28, at 6.[2]) At that time, she owed just over $220,000 on the mortgage obligation on that property. (Trial Tr. at 33:3-5.) On November 7, 2014, the Debtor and her daughter purchased a residence on Clyde Avenue with a loan obtained from Urban Partnership Bank in the amount of $120,650 (the "Urban Partnership Obligation"). (*Id.* at 6:18-7:22; *see* Pl.'s Ex. 7.[3]) The Debtor and her grandson moved into the Clyde Avenue property at the end of November 2014. (Trial Tr. at 30:13-31:3.) Monthly payments on the Urban Partnership Obligation started to become due on January 1, 2015. (Pl.'s Ex. 7.)

On November 17, 2014, before moving into the Clyde Avenue property, the Debtor obtained an unsecured loan of $5,000 from the Plaintiff. (Trial Tr. at 18:19-25.) At that time, the Debtor had been a member in good standing of the Plaintiff-credit union since 1989. (*Id.* at 18:13-18.) The Plaintiff had previously extended loans to the Debtor, all of which had been paid off at the time the $5,000 loan was made. (*Id.* at 13:3-13, 42:1-3; *see* Pl.'s Ex. 6.) As a result, in

---

[2] Unless otherwise noted, references to the docket are to this adversary proceeding, Adv. No. 15-550.

[3] All references to exhibits are to those submitted by the parties during the trial.

making the $5,000 loan, the Plaintiff did not require much information other than the Debtor's "star number." (Trial Tr. at 13:6-13.) On the same day that the $5,000 loan was made, the Plaintiff obtained a Transunion credit report for the Debtor and approved the loan. (*Id.* at 18:19-19:10; Pl.'s Ex. 6.) Notably, the Debtor's Urban Partnership Obligation did not appear on the November 17, 2014 credit report. (Trial Tr. at 19:11-13; Pl.'s Ex. 6.) No evidence was presented as to whether the Debtor informed the Plaintiff of the Urban Partnership Obligation when the $5,000 loan was made.

On December 1, 2014, the Debtor contacted the Plaintiff via telephone, requesting an additional loan in the amount of $10,000 for medical and moving expenses. (Trial Tr. at 13:3-5, 18:23-25; 39:17-21.) The loan was approved, and the Plaintiff requested that the Debtor come to the Plaintiff's office to sign the necessary loan documents and receive the loan proceeds. (*See id.* at 13:14-17.) The Plaintiff subsequently rolled the outstanding $5,000 debt into a new $15,000 loan (the "Second Loan"). (*Id.* at 18:19-19:3.)

Davis testified that the Plaintiff's maximum debt-to-income ratio threshold in extending unsecured loans to its members is 50%. (*Id.* at 17:21-24.) In approving the Second Loan, the Plaintiff calculated that the Debtor's debt-to-income ratio was 48% based on the November 17, 2014 credit report. (*Id.* at 19:17-22.) The Plaintiff did not obtain a new credit report for the Debtor on December 1, 2014.[4] (*Id.* at 19:8-10.) No evidence was presented regarding whether the Debtor informed the Plaintiff of the Urban Partnership Obligation when the Second Loan was

---

[4] Neither party addressed why a second or updated credit report was not obtained. The Plaintiff was authorized to run a new credit report pursuant to the Credit Report Authorization clause in the December 1, 2014 loan application which states:

> By signing this Application, I authorize you to obtain my credit report for the purposes of evaluating this application and to obtain subsequent credit reports on an on-going basis in connection with this transaction, and for all other legitimate purposes, such as reviewing my accounts or taking collection action on the account.

(Pl.'s Ex. 2, at 2.)

3

made.[5] Davis testified, however, that, if the Urban Partnership Obligation had been included when calculating the Debtor's debt-to-income ratio for the Second Loan, that ratio would have been 61%, thereby exceeding the Plaintiff's maximum threshold. (*Id.* at 19:23-20:23.)

Later in the day on December 1, 2014, the Debtor went to the Plaintiff's office and signed the appropriate loan documents for the Second Loan. (*Id.* at 13:14-21.) The Debtor testified that the documents were already filled out by the Plaintiff when she was given them to sign. (*Id.* at 12:22-25.) The documents included a loan application (Pl.'s Ex. 2), a Truth in Lending statement (Pl.'s Ex. 3), and a Statement of Reliability (Pl.'s Ex. 4). The Debtor's outstanding debts listed on the loan application are consistent with those appearing on the November 17, 2014 credit report which the Plaintiff used to complete the application. (Trial Tr. at 22:1-3.) Thus, the Urban Partnership Obligation was not listed on the Second Loan application. (*Id.* at 19:11-13; Pl.'s Ex. 2, at 2.)

The application reflects the purpose of the Second Loan as "medical/moving expenses." (Pl.'s Ex. 2, at 1; *see* Trial Tr. at 39:17-21.) The Debtor testified that, when the loan documents were signed, the Plaintiff did not ask the Debtor any questions regarding the purpose of the Second Loan. (*See* Trial Tr. at 41:14-17.)

Davis testified that the Statement of Reliability is required to ensure that applicants provide the Plaintiff with accurate and truthful information in loan papers. (*Id.* at 27:4-14.) The Statement of Reliability provides, in part, as follows:

> I, <u>Lolita M Fenner</u>, understand that Chicago Patrolmen's Federal Credit Union has relied on the representation that I have made in my loan application concerning my assets and debts, in determining whether or not to make the loan for which I have applied.
>
> I grant the Credit Union my permission to check my credit with a credit bureau.

---
[5] The loan officer who processed the Second Loan was not a witness at trial.

4

> However, my representations on this application are equally important in the Credit Union's decision to lend money to me pursuant to the terms of my application.
>
> On my application, I have disclosed ALL of my assets and listed their true values and I have disclosed ALL of my debts and the current balances due.

(Pl.'s Ex. 4.) The Debtor's signature appears at the bottom of the document. (*See id.*)

The Debtor testified that she "somewhat" reviewed the Truth in Lending statement and loan application and had "a chance" to review the Statement of Reliability. (Trial Tr. at 13:22-14:21, 40:13-22.) According to the Debtor, she had not realized when she signed the documents that the Urban Partnership Obligation was not listed among her debts (*id.* at 12:16-19, 40:23-41:1), and she did not purposely omit the Urban Partnership Obligation (*id.* at 43:12-14). The Debtor further testified that she believed that all of the documents she signed were true and accurate and that the approval and processing of the Second Loan were similar to the approval and processing of the previous loans that she had received from the Plaintiff. (*Id.* at 41:10-25.) Davis testified that he had no reason to doubt the accuracy of the materials that the Debtor signed. (*Id.* at 20:24-21:4.) Neither the Debtor nor Davis testified regarding any conversation that the Plaintiff had with the Debtor at the time the documents were signed for the Second Loan.

The Debtor testified that she did not use the proceeds of the Second Loan to pay down any of her outstanding debts. (*Id.* at 42:12-19.) Rather, she used the proceeds to move, to buy things for her new residence on Clyde Avenue, and "to help support [herself] while [she] transitioned and moved from one property to the other." (*Id.* at 40:8-10, 44:21-45:1.) The Debtor also testified that she had always intended to repay the Second Loan (*id.* at 43:9-11) and that she had intended to "pay back the credit union as much as [she] possibly could" upon the sale of the 83rd Street property (*id.* at 46:4-8). In her brief in support of her motion to dismiss,

5

the Debtor stated that the Second Loan was to be a bridge loan. (Docket No. 11, at 3.)

The Plaintiff alleged in its amended complaint that, if it had known of the bridge purpose of the Second Loan, it "would have further investigated [the Debtor's] ability to repay the debt and required additional documentation regarding the appraisal of the [Debtor's] property she was attempting to sell." (Compl. ¶ 16.) The Plaintiff later argued in its pleadings, however, that, had it known the Debtor intended to use the Second Loan as a bridge loan, "it would not have provided the personal loan to [her]." (Joint Pretrial Statement, Docket No. 28, at 4.) At trial, the Plaintiff did not clarify its position. Davis' only testimony in that regard was that the Plaintiff does not offer "bridge loans." (Trial Tr. at 18:6-9.) Davis did not testify about what he considered a "bridge loan" to be or whether the Second Loan violated the Plaintiff's policies. No testimony was elicited from the Debtor about whether she knew that the Plaintiff had a policy against making "bridge loans" or whether she believed that the Plaintiff would not have made the Second Loan if she had stated that the purpose of the loan was a "bridge loan."

On December 8, 2014, about a week after the Second Loan was finalized, the Debtor entered into a contract to sell the 83rd Street property for $250,000, under which the Debtor expected to receive net proceeds of over $22,000. (*See* Def.'s Ex. D; Joint Pretrial Statement, Docket No. 28, at 6.) The transaction was scheduled to close on January 22, 2015. (*See* Def.'s Ex. D, at 8.) That sale fell through, however, as the appraisal of the property was not high enough for the buyer to secure financing. (Trial Tr. at 44:15-20; Joint Pretrial Statement, Docket No. 28, at 7.)

The December 8, 2014 contract is the only real estate contract that the Debtor submitted into evidence. At trial, the Debtor testified that she had had a previous contract to sell the 83rd

6

Street property that had been pending when the Second Loan was processed; however, the Debtor presented no documentary evidence of this purported contract. (*See* Trial Tr. at 45:18-49:19.) Among the documents that the Debtor submitted with respect to the attempted sale of the 83rd Street property was a notice dated December 3, 2014 denying an applicant's request for a mortgage loan on that property. (Def.'s Ex. D, at 6; *see also* Joint Pretrial Statement, Docket No. 28, at 6-7.) The applicant's name on that notice is different from the name of the buyer on the December 8, 2014 contract. Thus, there may have been a previous contract pending at the time of the Second Loan.

The Debtor made one timely payment on the Second Loan, on December 31, 2014. (Trial Tr. at 21:15-17; *see* Pl.'s Exs. 3 & 5.) The Debtor testified that the following month she realized that she could no longer pay back the Second Loan with the proceeds from the sale of the 83rd Street property because she was not going to be able to sell it for a profit. (Trial Tr. at 42:4-43:1; *see also* Joint Pretrial Statement, Docket No. 28, at 7.) Accordingly, she began to think about filing for bankruptcy relief. (Trial Tr. at 43:2-4.)

The 83rd Street property ultimately sold in a short sale on April 30, 2015 for $195,000. (*Id.* at 43:25-44:1; *see* Def.'s Ex. D, at 40.) The Debtor did not receive any proceeds from the sale to pay down the Second Loan. (Trial Tr. at 44:7-9.) She sought legal counsel in May 2015 (*id.* at 43:5-8) and filed her bankruptcy petition under chapter 7 of the Bankruptcy Code on June 5, 2015 (Case No. 15-19829, Docket No. 1).[6] The Second Loan is the largest unsecured debt listed on the Debtor's schedule F. (Trial Tr. at 11:8-11.)

On December 10, 2015, the Plaintiff filed an amended complaint seeking a determination

---

[6] The Debtor received her discharge on September 21, 2015. (Case No. 15-19829, Docket No. 15.)

7

that the debt in connection with the Second Loan is nondischargeable.[7] The Debtor answered the amended complaint on February 3, 2016, and a trial was held on June 29, 2016. At the conclusion of the trial, the Court took the matter under advisement. After a review of all of the relevant pleadings, exhibits, and testimony elicited at trial, the Court is now ready to rule.[8]

## DISCUSSION

In its amended complaint, the Plaintiff seeks a determination that the debt owed to it by the Debtor is nondischargeable pursuant to §§ 523(a)(2)(A) and (a)(2)(B). Exceptions to discharge must be construed strictly against the Plaintiff and liberally in favor of the Debtor. *See Stamat v. Neary*, 635 F.3d 974, 979 (7th Cir. 2011). Additionally, "[s]ection 523(a) is to be narrowly construed so as not to undermine the Code's purpose of giving the honest but unfortunate debtor a fresh start." *Shriners Hosp. for Children v. Bauman (In re Bauman)*, 461 B.R. 34, 44 (Bankr. N.D. Ill. 2011) (internal quotations omitted). As the party seeking to establish an exception to discharge, the Plaintiff bears the burden of proof on its claims by a preponderance of the evidence. *See Grogan v. Garner*, 498 U.S. 279, 291 (1991); *In re Bero*, 110 F.3d 462, 465 (7th Cir. 1997).

### I. DISCHARGEABILITY UNDER § 523(a)(2)(A)

In Count I of the amended complaint, the Plaintiff argues that the debt at issue is not dischargeable under § 523(a)(2)(A) for two reasons: (1) the Debtor obtained the Second Loan under false pretenses with respect to the purpose of the loan, and (2) the Debtor obtained the

---

[7] The Plaintiff originally filed its complaint on August 3, 2015. Although the Debtor's motion to dismiss the complaint was granted on December 2, 2015, the Court allowed the Plaintiff leave to file an amended complaint.

[8] After the Plaintiff rested its case, the Debtor moved for judgment on partial findings as to Count I of the amended complaint pursuant to Federal Rule of Civil Procedure 52(c), made applicable to this matter by Bankruptcy Rule 7052. (*See* Trial Tr. at 28:25-29:12.) In the interest of efficiency, the Court took the Debtor's motion under advisement and allowed the parties to continue with their testimony. As discussed herein, the Court has taken all testimonial evidence adduced during the trial into consideration and holds in favor of the Debtor as to both counts, rendering the Debtor's motion for judgment on partial findings as to Count I moot.

Second Loan through actual fraud as she did not have a good-faith intent to repay the loan at the time that it was made.[9] Pursuant to § 523(a)(2)(A), an individual debtor is not discharged from any debt "for . . . an extension . . . of credit, to the extent obtained by[] false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's . . . financial condition." 11 U.S.C. § 523(a)(2)(A).

A. Applicable Standards

To prevail on a claim under § 523(a)(2)(A) on the basis of false pretenses, the creditor must prove that: "(1) the debtor made a false representation or omission, (2) that the debtor (a) knew was false or made with reckless disregard for the truth and (b) was made with the intent to deceive, (3) upon which the creditor justifiably relied." *Ojeda v. Goldberg*, 599 F.3d 712, 716-17 (7th Cir. 2010); *Gasunas v. Yotis (In re Yotis)*, 548 B.R. 485, 495 (Bankr. N.D. Ill. 2016).

A creditor can satisfy the first element of a claim of false pretenses by showing that the debtor concealed a material fact. *See Deady v. Hanson (In re Hanson)*, 432 B.R. 758, 772 (Bankr. N.D. Ill. 2010). A fact is material if "the circumstances imply a specific set of facts and disclosure [of that fact] is necessary to correct what would otherwise be a false impression." *Baermann v. Ryan (In re Ryan)*, 408 B.R. 143, 157 (Bankr. N.D. Ill. 2009); *see generally Manheim Auto. Fin. Servs., Inc. v. Hurst (In re Hurst)*, 337 B.R. 125, 132-33 (Bankr. N.D. Tex. 2005).

A claim on the basis of actual fraud requires a creditor to prove that (1) a fraudulent act

---

[9] In its pleadings, the Plaintiff advances two additional arguments under § 523(a)(2)(A): (1) the Debtor made the false representation that she intended to repay the Second Loan, and (2) the Debtor omitted the Urban Partnership Obligation from the loan application, thereby falsely representing her financial information. The first argument is duplicative of the Plaintiff's actual fraud argument. Therefore, the Court will address the first argument in its discussion of actual fraud. Similarly, the second argument is duplicative of the Plaintiff's § 523(a)(2)(B) argument and, thus, will be addressed in the Court's discussion of Count II. *See* 11 U.S.C. § 523(a)(2)(A); *Citibank (S.D.), N.A. v. Harris (In re Harris)*, 203 B.R. 117, 121 (Bankr. N.D. Ill. 1996) (explaining that fraudulent statements in writing with respect to the Debtor's financial condition are the subject of § 523(a)(2)(B), not § 523(a)(2)(A)).

occurred, (2) the debtor intended to defraud, and (3) the fraud created the debt that is the subject of the discharge dispute. *Yotis*, 548 B.R. at 495. Actual fraud requires neither a false representation, *see Husky Int'l Elecs., Inc. v. Ritz*, 136 S. Ct. 1581, 1586 (2016), nor reliance, *see McClellan v. Cantrell*, 217 F.3d 890, 894 (7th Cir. 2000). Fraud includes any unfair way by which another party is cheated, such as surprise or trickery. *See Muhammad v. Sneed (In re Sneed)*, 543 B.R. 848, 862 (Bankr. N.D. Ill. 2015) (quoting *McClellan*, 217 F.3d at 893). A broken promise to pay is not in itself fraud. *Id.*; *Stelmokas v. Sinkuniene (In re Sinkuniene)*, Adv. No. 10-1418, 2012 WL 4471583, at *10 (Bankr. N.D. Ill. Sept. 27, 2012). However, such a broken promise may constitute fraud if the promising party never intended to pay. *See Sullivan v. Glenn (In re Glenn)*, 502 B.R. 516, 540 (Bankr. N.D. Ill. 2013).

Whether arguing that the Debtor obtained the Second Loan through false pretenses or that she committed actual fraud, the Plaintiff must prove that the Debtor subjectively intended to deceive the Plaintiff at the time that the loan was made. *See Yotis*, 548 B.R. at 495; *Sneed*, 543 B.R. at 862. Such fraudulent intent may be established either through direct evidence or by inference where the facts and circumstances present a picture of deceptive conduct on the part of the Debtor. *See Sneed*, 543 B.R. at 862-63; *Cent. Credit Union of Ill. v. Logan (In re Logan)*, 327 B.R. 907, 911 (Bankr. N.D. Ill. 2005). Despite relevant circumstantial evidence, however, the Court need not infer fraudulent intent where it would be inappropriate to do so. *See In re Sheridan*, 57 F.3d 627, 634 (7th Cir. 1995) ("Whether to infer the requisite intent is left to the bankruptcy court that presides over the case.").

B. False Pretenses

The Plaintiff alleges that the Second Loan should be found nondischargeable under

10

§ 523(a)(2)(A) because the Debtor misrepresented the purpose of the loan. Specifically, the Plaintiff argues that the Debtor intentionally failed to disclose a material fact — that the Second Loan was a bridge loan.

In direct contradiction to this contention, the evidence demonstrates that the Debtor was open and forthright with respect to the purpose of the Second Loan. At the time she initially contacted the Plaintiff to request the Second Loan, the Debtor indicated that the loan proceeds were to be used to cover medical and moving expenses. (*See* Trial Tr. at 13:3-13, 39:17-21.) Correspondingly, the loan application, which had been completed by the Plaintiff in advance, reflected that the purpose of the Second Loan was, indeed, for "medical/moving expenses." (Pl.'s Ex. 2, at 1.) When the loan documents were signed, the Plaintiff did not ask the Debtor any questions about the purpose of the loan. (*See* Trial Tr. at 41:14-17.) And although the Debtor referred to the Second Loan as a "bridge loan" in her pleadings, the fact that she did not use that term in the processing or completion of the loan documents does not mean that she failed — intentionally or otherwise — to disclose the purpose of the loan.

For its part, the Plaintiff provided little to no evidence to show either that the Debtor failed to disclose a material fact or that her alleged misrepresentation of the purpose of the Second Loan was material such that it left the Plaintiff with a false impression. At trial, the Plaintiff offered evidence only that it does not offer bridge loans. (*Id.* at 18:6-9.) The Plaintiff did not explain what it believes constitutes a bridge loan and failed to demonstrate that its definition of "bridge loan" matched the Debtor's understanding of what a "bridge loan" is.[10] Nor did the Plaintiff establish that the Debtor's stated purpose of the use of the loan proceeds violated

---

[10] Neither party defined the term "bridge loan." A bridge loan is "[a] short-term loan that is used to cover costs until more permanent financing is arranged or to cover a portion of costs that are expected to be covered by an imminent sale." *Loan (Bridge Loan), Black's Law Dictionary* (10th ed. 2014).

11

the Plaintiff's policy against bridge loans.

In sum, the Plaintiff has not met its burden to show that a material misrepresentation or omission was made for purposes of § 523(a)(2)(A). As a result, the Court need not address the remaining elements under that statutory exception, and the Court concludes that the Debtor did not obtain the Second Loan through false pretenses.

C. Actual Fraud

The Plaintiff also argues that the Debtor committed fraud for purposes of § 523(a)(2)(A) because she never intended in good faith to repay the Second Loan. Assuming that a fraudulent act took place which would satisfy the first element of the statutory exception, the Plaintiff must prove by a preponderance of the evidence that the Debtor intended to deceive the Plaintiff. *See Yotis*, 548 B.R. at 495.

In this matter, the Plaintiff provided the Court with only circumstantial evidence suggesting that the Debtor intended to deceive the Plaintiff with respect to the repayment of the loan. Specifically, the evidence showed that the Debtor incurred a new mortgage debt on the Clyde Avenue property less than a month before the Second Loan was made on December 1, 2014. Further, the evidence demonstrated that the Debtor failed to tell the Plaintiff that she intended to repay the loan with sale proceeds from her first home. The Plaintiff did not, however, proffer any evidence as to any conversation that may have transpired between the Debtor and the loan officer when the loan documents were signed. Such evidence could have provided more context as to the Debtor's state of mind at that time. And, while the Debtor made only one payment on the Second Loan, the missed payments do not necessarily indicate that the Debtor intended to deceive the Plaintiff when the loan was made. *See Sneed*, 543 B.R. at 862.

12

Thus, although the circumstances create an inference that the Debtor intended not to repay the loan when it was made, that inference is weak.

In contrast, the Debtor proved that she had had a prior course of dealing with the Plaintiff in receiving unsecured loans, all of which had been repaid when the $5,000 loan was made. The Debtor also presented evidence that she had attempted to sell her 83rd Street residence for a price above the value of the lien on that property, thereby producing excess funds with which she could have paid the Plaintiff. The December 8, 2014 contract, although dated after the provision of the Second Loan, would have yielded adequate proceeds to pay the Plaintiff back in full. The Debtor also testified as to another potential sale prior to the date the loan was made. From this evidence, the Court concludes that at the time the Debtor obtained the Second Loan, she intended to repay it. The Court also finds that, despite her obvious self-interest in this matter, the Debtor's testimony regarding her intent to repay the loan was credible. *See Hanson*, 432 B.R. at 776 (explaining that, in weighing the evidence, the court may take into account the interest of the witnesses in the outcome of the case and their conduct on the witness stand). The preponderance of the evidence weighs in favor of the Debtor, and the inference that she intended to deceive the Plaintiff is rebutted.

As the Plaintiff has failed to satisfy the intent element, the remaining elements of the actual fraud prong of § 523(a)(2)(A) need not be addressed. For the foregoing reasons, the Court concludes that the debt arising from the Second Loan is not excepted from discharge pursuant to § 523(a)(2)(A).

## II.   DISCHARGEABILITY UNDER § 523(a)(2)(B)

In Count II of the complaint, the Plaintiff argues that the debt is nondischargeable under

13

§ 523(a)(2)(B) because the Debtor intentionally misrepresented her financial condition by omitting the Urban Partnership Obligation from her loan application. To prevail on a claim under § 523(a)(2)(B), the Plaintiff must prove that: (1) the Debtor made a statement in writing that (2) was materially false (3) concerning the Debtor's financial condition; that (4) in making the statement, the Debtor intended to deceive the Plaintiff; and that (5) the Plaintiff reasonably relied on the statement. *See Fischer Inv. Capital, Inc. v. Cohen (In re Cohen)*, 507 F.3d 610, 613 (7th Cir. 2007); *Webster Bank, Nat'l Ass'n v. Contos (In re Contos)*, 417 B.R. 557, 563 (Bankr. N.D. Ill. 2009).

The parties agree that the loan application is a statement in writing concerning the Debtor's financial condition. And, although it was prepared by the Plaintiff, the loan application was signed by the Debtor. Thus, the first and third elements are satisfied. *See, e.g., Citibank (S.D.), N.A. v. Harris (In re Harris)*, 203 B.R. 117, 122 (Bankr. N.D. Ill. 1996) (concluding that the debtor made statements in writing concerning his financial condition, where a loan officer prepared a loan application for the debtor to sign).[11] The remaining elements, however, require more detailed analyses.

A. Materially False

A creditor can prove that a written statement is materially false for purposes of § 523(a)(2)(B) if it shows that the statement "paints a substantially untruthful picture of a financial condition by misrepresenting information of the type which would normally affect the decision to grant credit." *Contos*, 417 B.R. at 564. Alternatively, a creditor can satisfy the

---

[11] In *Harris*, a loan officer prepared an application based on financial data supplied by the debtor. *See* 203 B.R. at 118. In contrast, the Plaintiff here prepared the Debtor's loan application based on financial data obtained from a credit report rather than directly from the Debtor. Regardless, the Debtor adopted the information in the loan application with her signature, which constitutes a statement made by the Debtor for purposes of § 523(a)(2)(B). *See Bellco First Fed. Credit Union v. Kaspar (In re Kaspar)*, 125 F.3d 1358, 1361 (10th Cir. 1997).

"materially false" element by establishing that, but for the material misrepresentations, it would not have extended credit to the debtor. *See In re Bogstad*, 779 F.2d 370, 375 (7th Cir. 1985) ("The materiality of the omission [of a debt] is often attempted to be shown by the testimony of the lending officer that if he or she had known of the existence of the omitted debt, he would have refused to make the loan." (quoting 1 D. Cowans, Bankruptcy Law and Practice 343 (1978) (bracketed text in original))). The failure to disclose substantial debt on a loan application is considered a materially false statement. *See Selfreliance Fed. Credit Union v. Harasymiw (In re Harasymiw)*, 895 F.2d 1170, 1174 (7th Cir. 1990) (affirming nondischargeability of debt under § 523(a)(2)(B) where the debtor failed to disclose a $128,000 mortgage on a loan application); *Harris*, 203 B.R. at 122 (finding a materially false statement in the debtor's failure to disclose over $20,000 in loans issued shortly before the debtor signed a loan application).

While no direct evidence was presented to show that the Plaintiff would not have made the loan to the Debtor had the Urban Partnership Obligation been disclosed on the loan application, the Plaintiff established that the Debtor's debt-to-income ratio would have been materially impacted and would have exceeded the Plaintiff's permissible ratio if the new mortgage obligation had been included in the calculations. The omission of over $120,000 in debt is substantial. *See Harasymiw*, 895 F.2d at 1172 (concerning a similar amount of debt). Therefore, the Court concludes that the omission of the Urban Partnership Obligation on the loan application constitutes a materially false statement.

B. Intent to Deceive

Although the Plaintiff is able to satisfy the first three elements required under § 523(a)(2)(B), it fails at the fourth — that the Debtor intended to deceive the Plaintiff when she

15

submitted the loan application. As in the previous inquiry, the Court may rely upon direct evidence in determining the Debtor's intent, or it may logically infer the requisite intent from a false representation that the Debtor knew or should have known would have induced the Plaintiff to make the Second Loan. *See Sheridan*, 57 F.3d at 633. "A debtor's intent to deceive may also be demonstrated by showing reckless indifference to, or reckless disregard for, the accuracy of the information in a financial statement." *Contos*, 417 B.R. at 565. The decision of whether to infer a debtor's intent to deceive is left to the discretion of the court. *Sheridan*, 57 F.3d at 634.

Here, the Plaintiff argues that the Court should infer from the nondisclosure of the Urban Partnership Obligation that the Debtor intended to misrepresent her financial condition so that the Plaintiff would make the loan. The Debtor denies that she intended to deceive the Plaintiff, explaining that she did not even realize that the Urban Partnership Obligation was omitted when she reviewed and signed the loan documents.

Based on all of the evidence presented, the Court finds that the Debtor did not intend to deceive the Plaintiff by failing to disclose the Urban Partnership Obligation. The Debtor is an "average" consumer — not a sophisticated or experienced businessperson. She had obtained loans from the Plaintiff in the past, and the processing of the Second Loan was conducted in a manner similar to the processing of those previous loans. According to the Debtor, the loan documents had already been filled out by the Plaintiff when they were presented to her for signature. And Davis, himself, testified that the loan application had been prepared with information contained in a credit report obtained by the Plaintiff that was not altogether current. (*See* Trial Tr. at 18:19-19:10, 21:18-22:7.)

Moreover, the Plaintiff presented no compelling evidence that the Debtor exhibited a lack

16

of care or acted with reckless disregard in connection with the accuracy of the financial information in the loan application. Nor did the Plaintiff offer evidence that the Debtor intended to provide an incomplete or inaccurate picture of her financial situation or that she knew that the omission of the Urban Partnership Obligation would induce the Plaintiff to make the loan. In contrast, the Debtor credibly testified that she simply did not realize that the Urban Partnership Obligation was missing from the loan application and that she believed that she had a viable means of repaying the loan with the proceeds of the sale of the 83rd Street property. *See Hanson*, 432 B.R. at 776 (citing *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 575 (1985)) (explaining that the Court is in "the best position to assess the credibility of the witnesses and weigh the evidence"). Thus, under all of the circumstances in this matter, the Court, in its discretion, will not infer fraudulent intent based on the omission of the Urban Partnership Obligation.[12] *See Cmty. Choice Credit Union v. Forget (In re Forget)*, 392 B.R. 773, 778-79 (Bankr. S.D. Iowa 2008) (declining to infer fraudulent intent despite inaccurate information on debtors' loan applications, where debtors had been actively trying to achieve some feasible way to pay creditor).

In sum, the weight of the evidence does not show that the Debtor undertook to circumvent or cheat the Plaintiff with "any deceit, artifice, trick, or design involving direct and active operation of [her] mind." *See McClellan*, 217 F.3d at 893 (internal quotation omitted). Accordingly, the Court finds that the Plaintiff has not established that the Debtor intended to deceive the Plaintiff for purposes of § 523(a)(2)(B).

As discussed above, the Plaintiff has proven the first three elements under § 523(a)(2)(B)

---

[12] Courts that have found otherwise have done so under circumstances distinguishable from those in the matter at bar. *See, e.g., Contos*, 417 B.R. at 565-66 (involving financially sophisticated debtor); *Tower Credit, Inc. v. Touchet (In re Touchet)*, 394 B.R. 418, 423-24 (Bankr. M.D. La. 2008) (finding debtor's testimony not credible); *Sparkman v. Janes (In re Janes)*, 51 B.R. 932, 936 (Bankr. D. Kan. 1985) (involving financially experienced debtor).

but has failed to meet its burden with respect to the fourth. Therefore, the remaining element of reliance need not be considered, and the Court concludes that the Plaintiff is not entitled to relief under Count II.

## CONCLUSION

For the foregoing reasons, the Court finds that the Plaintiff has not met its burden to establish the required elements of § 523(a)(2)(A) or § 523(a)(2)(B). As such, the debt at issue will not be excepted from discharge. A separate order will be entered consistent with this Memorandum Opinion.

ENTERED:

Dated: <u>October 24, 2016</u>

_____
Janet S. Baer
United States Bankruptcy Judge